# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GENERAL III, LLC d/b/a SOUTHSIDE RECYCLING and RMG INVESTMENT GROUP, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF CHICAGO and DR. ALLISON ARWADY, in her Official Capacity as the Commissioner of the Chicago Department of Public Health, <br><br> Defendants. | Case No. 21-cv-2667 <br><br> Judge Robert M. Dow, Jr. |

## MEMORANDUM OPINION AND ORDER

Yesterday the Supreme Court of the United States reaffirmed that "[w]hen a plaintiff alleges a regulatory taking in violation of the Fifth Amendment, a federal court should not consider the claim before the government has reached a 'final' decision." *Pakdel v. City & County of San Francisco*, 594 U.S. ---, 2021 WL 2637819, at *1 (June 28, 2021). That principle requires dismissal of Count IV of Plaintiffs' complaint—the sole claim asserted to be within the Court's original jurisdiction—on ripeness grounds. The allegations of the complaint and the record compiled to date establish that Defendants have suspended their review of Plaintiffs' permit application to conduct further review at the request of federal regulators but have not issued a final determination one way or the other. Furthermore, applying the usual rule in the Seventh Circuit, the Court declines to exercise supplemental jurisdiction over the remaining claims (Counts I, II, and III), all of which arise under state law. Indeed, even if Plaintiffs' claim under the Takings Clause were ripe, principles of federalism would convince the Court, in the exercise of its discretion, to relinquish supplemental jurisdiction over Counts I, II, and III as Plaintiffs' requests

for immediate and mandatory injunctive relief under those counts rest on the application of state law to a municipality's construction of its own rules and guidelines.

In sum, Count IV is dismissed without prejudice as premature and Counts I, II, and III are dismissed without prejudice and with leave to refile in state court pursuant to 735 ILCS 5/13-217. The Court does not reach the merits of Plaintiffs' motion for a writ of mandamus and/or injunctive relief [7], which is terminated as moot in view of the Court's jurisdictional rulings. A final judgment consistent with this opinion will enter under Federal Rule of Civil Procedure 58. This civil case is terminated.

**I.    Background**

Plaintiffs General III, LLC d/b/a Southwest Recycling and RMG Investment Group, LLC have filed this lawsuit against Defendants City of Chicago and Dr. Allison Arwady in her official capacity as the Commissioner of the Chicago Department of Public Health. At stake is the issuance of an operating permit that would allow Plaintiffs to operate a large recycling facility known as Southside Recycling ("SR"). According to the complaint, Plaintiffs have made an $80 million investment in the facility and have completed a rigorous, two-year zoning, rulemaking, and permitting review process. Plaintiffs insist that they have complied with every City requirement necessary to be granted the permit they seek. Yet a final decision on the permit has not been made, in part due to Defendants' accession to a May 7, 2021 request from the United States Environmental Protection Agency ("USEPA") asking the City to halt its review of SR's permit application so that additional environmental justice analysis can be conducted. According to Plaintiffs, Defendants' refusal to issue the permit violates the Chicago Municipal Code and constitutes a breach of the City's contractual obligation to work "expeditiously and efficiently" with Plaintiffs on the permitting process. Plaintiffs claim that they are suffering irreparable harm

and significant financial damage and ask the Court to issue a writ of mandamus directing Defendants to issue the operating permit pursuant to Section 11-4-2520 of the City's Municipal Code and the City's Rules for Large Recycling Facilities, or in the alternative to enjoin Defendants from interfering with SR's right to operate a large recycling facility on its property.[1]

## II.     Analysis

In every case, the first task of a federal court is to ensure that it has jurisdiction. See, *e.g.*, *Grinnell Mut. Reins. Co. v. Haight*, 697 F.3d 582, 584 (7th Cir. 2012); *Hay v. Ind. State Bd. of Tax Comm'rs*, 312 F.3d 876, 879 (7th Cir. 2002) (court must raise jurisdiction *sua sponte* if parties do not raise it). Article III courts may only adjudicate matters where a live case or controversy exists. See *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (explaining that "the doctrines of mootness, ripeness, and political question all originate in Article III's 'case' or 'controversy' language"). In addition, to invoke the original jurisdiction of a federal court, the plaintiff's complaint must present either a federal question (28 U.S.C. § 1331), or the parties must satisfy the prerequisites for diversity jurisdiction—namely, complete diversity of citizenship and a sufficient amount in controversy (28 U.S.C. § 1332). A party that successfully invokes a federal court's original jurisdiction may also bring claims that arise under state law in the same case under the court's supplemental jurisdiction (28 U.S.C. § 1367), but the exercise of that jurisdiction is discretionary. See, *e.g.*, *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 172 (1997).

In their complaint, Plaintiffs bring four claims. The first three arise under state law. Count IV arises under federal law—the Fifth and Fourteenth Amendments to the Constitution of the

---

[1] It appears from the complaint and the City's Guidelines that the next stage in the permitting process for Plaintiffs would be the issuance of a draft permit, followed by a 30-day public comment period, before a final permit could be issued. See [1, at 14-15]; see also [29, at 12-13 (Defendants' brief describing same process)].

3

United States—as it seeks compensation under the Takings Clause. This claim is the sole hook for original federal jurisdiction, as Plaintiffs' counsel confirmed on the record that diversity jurisdiction is lacking. Defendants note [see 29, at 23] that "appealing to a federal court's supplemental jurisdiction to issue state-law mandamus against a municipality when the only federal claims in this case are not even included in the motion for preliminary relief raises complicated jurisdictional concerns," but do not elaborate on those "concerns" or offer their views on how the Court ought to address them. But that observation alone is enough to raise at least yellow flags (if not red ones), and (as noted above) the Court has an independent obligation to police its own jurisdiction in any event.

A. **Original Jurisdiction**

The first question is whether Plaintiff has asserted a claim that lies within the Court's original jurisdiction. There are several potential obstacles, and Plaintiffs manage to clear most of them cleanly. The Court agrees with Plaintiffs that their decision to plead a claim for immediate mandamus and injunctive relief under state law and a claim for just compensation under federal law comports with the Federal Rules of Civil Procedure, which do in fact allow pleading in the alternative. And Plaintiffs' decision to advance their "vested rights" theory through an immediate motion for mandamus and other injunctive relief [see 7] while holding the takings claim in reserve at this time complies with settled principles of law as well. See *Image Media Advertising, Inc. v. City of Chicago*, 2017 WL 6059921, at *5 (N.D. Ill. Dec. 7, 2017) (recognizing that "a takings claim is intended to compensate with money an individual whose property rights are impacted by government action, while the 'vested property rights' doctrine provides injunctive relief actually allowing the plaintiff to use the property as he or she wishes, overruling the government's effort to halt such use"). Finally, the Court also concurs in Plaintiffs' assertion [36, at 8] that a takings

4

claim for a denial of a permit to operate in the circumstances of this case would be "real and substantial" as those terms are defined in the Supreme Court's jurisprudence. See *Hagans v. Lavine*, 415 U.S. 528, 537-38 (1974); *Bell v. Hood*, 327 U.S. 678, 682-83 (1946).

Nevertheless, Plaintiffs must clear another hurdle to validly invoke the Court's original jurisdiction: their takings claim must be ripe. The purpose of the ripeness doctrine is to "prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Thomas v. Union Carbide Agr. Prod. Co.*, 473 U.S. 568, 580 (1985) (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148 (1967)). As the Seventh Circuit has noted, the Supreme Court has "articulated a special ripeness doctrine for constitutional property rights claims." *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000); see also Wright & Miller, 13B FED. PRAC. & PROC. JURIS. § 3532.1.1 (3d ed.) ("A special category of ripeness doctrine surrounds claims arising from government takings of property."). Under this ripeness standard, a plaintiff may initiate an action when "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985), *overruled on other grounds by Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2169 (U.S. 2019); see also *id.* (reaffirming the "validity of this finality requirement"); *Church of Our Lord & Savior Jesus Christ v. City of Markham, Ill.*, 913 F.3d 670, 678 (7th Cir. 2019) (noting that "the Supreme Court's ripeness test for Takings Clause claims . . . requires a plaintiff to obtain a 'final decision' from a local government about how it may use its property before ripening a claim"); 2 AM. LAW. ZONING § 16:12 (5th ed.) ("The Supreme Court's decision in *Knick* overruled *Williamson County* only to the extent that it forced takings plaintiffs to seek just compensation in state court in order to ripen their federal court takings action. The decision

5

expressly states that it does not affect the other prong of the *Williamson County* ripeness test, which requires takings plaintiffs to obtain a final agency decision in order to establish ripeness.").

As noted above, yesterday's Supreme Court decision again reaffirmed the finality requirement for claims under the Takings Clause. *Pakdel*, 594 U.S. ---, 2021 WL 2637819, at *1 ("When a plaintiff alleges a regulatory taking in violation of the Fifth Amendment, a federal court should not consider the claim before the government has reached a 'final' decision."). The Court explained the rationale for the rule as follows: "until the government makes up its mind, a court will be hard pressed to determine whether the plaintiff has suffered a constitutional violation." *Id*. (citations omitted). To be sure, "[t]he finality requirement is relatively modest," (*id*. at *2), especially since the exhaustion requirement recognized in *Williamson* was overruled in *Knick*. Still, "*de facto* finality is necessary" and the government must have "adopted its final position." *Pakdel*, 594 U.S. ---, 2021 WL 2637819, at *3; see also *id*. at *2 ("All a plaintiff must show is that 'there [is] no question . . . about how the 'regulations at issue apply to the particular land in question.'"); *id*. at *3 (noting that the government must be "committed to a position" before a "dispute is ripe for judicial resolution").

The record currently before the Court reveals that no final decision has been made in regard to the requested operating permit. According to the complaint, "USEPA has asked the City to suspend the LRF permit review," which the City "improperly agreed to do." [1, at 7]; see also [12, at 5] ("The City has honored the USEPA's request and has suspended the LRF permit issuance indefinitely"). Indeed, the complaint itself alleges a "delay," not a denial. See [12, at 4 (noting the City's "purposeful delay in issuing the LRF permit")]. Defendants' description of the current status confirms the absence of a final determination. According to the City, further review is being

6

conducted [32-1, at 2-3] as a result of "high-level federal concerns based on concepts of environmental justice" [29, at 6].

Plaintiffs resist the notion that Defendants' "continued evaluation" of the permit application indicates that a taking has not yet taken place. They note that "Illinois courts have viewed the refusal to process an application as 'tantamount to a denial of said permits.'" [36, at 10 (quoting *Willie Pearl Burrell Trust v. City of Kankakee*, 56 N.E.3d 1067, 1073 (Ill. App. 3d Dist. 2016))]. According to Plaintiffs [36, at 10], the "indefinite, undefined" continued evaluation renders SR's property useless at this time. Plaintiffs also rely [see *id.*] on the Supreme Court's decision in *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1012 (1992), which held that "it would not accord with sound process to insist that [the plaintiff] pursue the late-created 'special permit' procedure before his takings claim can be considered ripe." But, as the footnote appended to the sentence immediately after the quoted language explains, the circumstances in *Lucas* were quite different. Because the defendant "stipulated below that no building permit would have been issued under the 1988 Act, application or no application," the Court concluded that pursuing the special permit procedure "would have been pointless." *Id.* at n.3. Similarly, in *Willie Pearl*, after the plaintiff applied for renewal of its rental licenses between June 2011 and November 2013, the defendant "took no action on plaintiff's applications, neither approving them nor denying them * * * in reliance on a City ordinance prohibiting the issuance of any license to any party indebted to the City." 56 N.E.3d at 1070.

*Lucas* and *Willie Pearl* thus both involved situations where further efforts to satisfy the regulators would have been futile. But not all delays in approving permits or licenses are futile, and authorities at all levels of government—local, state, and federal—are entitled to engage in careful consideration of proposed land uses, especially if the plaintiff's operations have the

7

potential to impinge on matters of public interest, as Plaintiffs' operations plainly do. The Supreme Court has addressed the borderline between delay and futility as follows:

> Under our ripeness rules a takings claim based on a law or regulation which is alleged to go too far in burdening property depends upon the landowner's first having followed reasonable and necessary steps to allow regulatory agencies to exercise their *full discretion* in considering development plans for the property, including the opportunity to grant any variances or waivers allowed by law. As a general rule, until these ordinary processes have been followed the extent of the restriction on the property is not known and a regulatory taking has not yet been established.

*Palazzolo v. Rhode Island*, 533 U.S. 606, 620–21 (2001) (emphasis added and citation omitted). The Court added that "[g]overnment authorities, of course, may not burden property by imposing repetitive or unfair land-use procedures in order to avoid a final decision." *Id*. at 621 (citing *Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, 698 (1999)). But USEPA's heightened concern with "concepts of environmental justice" [29, at 6] is new—perhaps an application of the adage that "elections have consequences"[2]—and it has not even been two months since Defendants suspended their permit review to allow for additional evaluations in response to the request of the federal authorities. Defendants' frustration with these additional layers certainly is understandable, and the Court expresses no view on whether they amount to a breach of contract or a dereliction of duty remediable under the state law mandamus instrument, but they do not (at least yet) constitute a taking under the federal Constitution.

This conclusion is buttressed by the Seventh Circuit's opinion in *Flower Cab Co. v. Petitte*, 685 F.2d 192 (7th Cir. 1982), in which the court of appeals counseled caution in concluding that a delay in municipal action on a license application justifies either (a) the entry of a mandatory injunction by a federal court or (b) the conclusion that an unconstitutional deprivation of the

---

[2] See 12-1, at 8 (Letter of USEPA Administrator Michael Regan to Mayor Lightfoot stating: "I do not believe U.S. EPA's public comments submitted by the prior administration during the state permitting process were adequate, and they do not reflect the current priorities and policies of the U.S. EPA.").

plaintiffs' property rights has occurred. In staying a preliminary injunction issued by the district court, the court of appeals opined that a "mere delay in the assignment of some taxicab licenses pending action by the City Council on a proposal to make such licenses nonassignable should be compensable by money damages, at least in the absence of some indication that it may take the City Council months or years to act." *Id.* at 194. In addition, "[e]ven if the proposed ordinance, if enacted, would result in an unconstitutional deprivation of the plaintiffs' property rights, it would obviously be premature to enjoin the enforcement of an ordinance that has not yet been enacted, and for all we know may never be; indeed, there is no actual controversy so far as the proposed ordinance is concerned." *Id*.

These principles convince the Court that Plaintiffs' claim under the Takings Clause—their only claim that arises under federal law and this Court's original jurisdiction—is not yet ripe and may never be if Defendants ultimately issue the requested permit. As the Seventh Circuit has stated, the objective of ripeness is to "avoid premature adjudication" of "claims premised on uncertain or contingent events." *Church of Our Lord & Savior*, 913 F.3d at 676. And, more to the present point, "because ripeness implicates the district court's subject-matter jurisdiction under Article III of the Constitution," this Court "must consider the question on [its] own accord" and must dismiss without prejudice any claim that has been advanced before its time. *Harer v. Casey*, 962 F.3d 299, 306, 311 (7th Cir. 2020).[3] Count IV is such a claim.

Because that disposition results in the dismissal of all claims over which the Court has original jurisdiction, see 28 U.S.C. § 1367(c)(3), the Court must address whether to retain

---

[3] Plaintiffs cite [36, at 7] *Hagans*, 415 U.S. at 542, for the proposition that "[w]hether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy." The decision today fully comports with *Hagans*, for the basis for dismissal is ripeness, not failure to state a claim. Because Plaintiffs' takings claim is not ripe, the Court cannot "assume[] jurisdiction" over it.

9

jurisdiction over the state law claims in Count I, II, and III. As the Seventh Circuit consistently has stated, "it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999); see also *Williams v. Rodriguez*, 509 U.S. 392, 404 (7th Cir. 2007) ("As a general matter, when all federal claims have been dismissed prior to trial, the federal court should relinquish jurisdiction over the remaining pendant state claims."); *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994) ("the general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendant state-law claims rather than resolving them on the merits"). Yet the court of appeals has discussed "three well-recognized exceptions" to the general rule that "when all federal-law claims are dismissed before trial, the pendent claims should be left to the state courts." *Id.* at 1252. As the court has explained, occasionally there are "unusual cases in which the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point to a federal decision of the state-law claims on the merits." *Id*.

The first example that the court discussed occurs "when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court." *Wright*, 29 F.3d at 1251. That concern is not present here. Plaintiffs' federal claim is premature and its other claims were commenced less than two months ago. In any event, Illinois law gives Plaintiff one year from the dismissal on jurisdictional grounds of state law claims in federal court in which to refile those claims in state court. See 735 ILCS 5/13-217; see also *Sharp Electronics Corp. v. Metropolitan Life Ins. Co.*, 578 F.3d 505, 514-15 (7th Cir. 2009); *Davis v. Cook County*, 534 F.3d 650, 654 (7th Cir. 2008).

The second exception recognized in *Wright* applies when "'substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort.'" 29 F.3d at 1251 (quoting *Graf v. Elgin, Joliet & E. Ry. Co.*, 790 F.2d 1341, 1347-48 (7th Cir. 1986)). Here, the Court has not devoted significant resources to this case beyond addressing its jurisdiction and has not delved into the merits of the state law claims at all. While there clearly are instances in which "a district court *should* exercise supplemental jurisdiction over pendent state law claims for reason of judicial efficiency," *Miller Aviation v. Milwaukee County Board of Supervisors*, 273 F.3d 722, 732 (7th Cir. 2001), this is not one of them.

The third circumstance to which the court of appeals has pointed in which disposition of pendent state law claims may be appropriate "occurs when it is absolutely clear how the pendent claims can be decided." *Wright*, 29 F.3d at 1251. For example, "[i]f the district court, in deciding a federal claim, decides an issue dispositive of a pendent claim, there is no use leaving the latter claim to the state court." *Id*. In addition, if the state-law claims are "patently frivolous," they should be resolved right away in the federal court. *Id*. However, "[i]f the question whether a state-law claim lacks merit is not obvious, comity concerns may dictate relinquishment of jurisdiction." *Id*. Here, at least at first glance the state law claims appear to be debatable and, as discussed below, comity and federalism concerns weigh overwhelmingly in favor of relinquishing, not exercising, jurisdiction over the state law claims.

In sum, the Court concludes that none of the exceptions to the "usual practice" applies in this case. Accordingly, in view of the dismissal of Count IV on jurisdictional grounds, Counts I, II, and III will also be dismissed—also without prejudice.

B.   **Supplemental Jurisdiction**

In an abundance of caution, the Court will now assume that its ripeness determination above is incorrect and that it does in fact have jurisdiction over Count IV at this time. If that were true, then the question presented in Plaintiffs' supplemental brief would be front and center: should the Court exercise its discretion to rule on Plaintiffs' requests for immediate relief on its state law claims as an exercise of supplemental jurisdiction? In arguing that "this Court *should* exercise that jurisdiction" [36, at 7 (emphasis added)], Plaintiffs recognize that Section 1367(a) provides an authorization, not an obligation, for a federal court to decide a question of state law. As the Supreme Court has explained, "to say that the terms of § 1367(a) authorize the district courts to exercise supplemental jurisdiction over state law claims * * * does not mean that the jurisdiction *must* be exercised in all cases." *City of Chicago*, 522 U.S. at 172 (emphasis in original).

In fact, the Supreme Court's decisions have recognized that "district courts can decline to exercise jurisdiction over pendent claims for a number of valid reasons," including "economy, convenience, fairness, and comity." *Id*. at 172-73. The statutory text also "confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise":

> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*Id.* at 173 (quoting 28 U.S.C. § 1367(c)). "The statute thereby reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and

weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

Here—again, assuming (contrary to the analysis set out above) that Plaintiffs' federal claim is not subject to dismissal—these factors indicate that the Court should not exercise supplemental jurisdiction over Plaintiffs' state law claims. To begin, a mandamus claim seeking a mandatory injunction does present a novel claim. State law mandamus claims are not all that common in state court, much less federal court. The parties do cite some examples, but they are few and far between. More importantly, Plaintiffs' briefs make clear that, especially at this stage of the case, the state law claims substantially predominate over the federal claim. Indeed, the state law claims *entirely* predominate, as the federal claim is not even mentioned in Plaintiffs' motion or brief. Furthermore, as Plaintiffs recognize, the injunctive relief that they seek is not available for a takings claim, now or likely ever. See *Knick*, 139 S. Ct. at 2168 ("[s]o long as the property owner has some way to obtain compensation after the fact, governments need not fear that courts will enjoin their activities" under the Takings Clause).

Finally, federalism concerns also provide strong reasons to usher Plaintiffs' state law claims to state court rather than deciding them here. Plaintiffs suggest [see 36, at 7] that the fact that a federal agency is the apparent source of the latest delay in the permitting process supports the exercise of federal jurisdiction. This is not persuasive. The legal claim for relief rests on state law, which permits courts to issue writs of mandamus, and the factual basis is an asserted entitlement "to the operating permit under the City's Rules and Guidelines." [36, at 8.] As the Seventh Circuit noted in *Flower Cab*, "[t]he federal courts are an odd place to litigate compliance with municipal law, and section 1983 an inapt mandamus actions against municipal officials,"

13

especially considering that "mandamus is available under Illinois law to compel local officers to perform their ministerial duties." 685 F.2d at 193; see also *Covington Court, Ltd. v. Village of Oak Brook*, 77 F.3d 177, 179 (7th Cir. 1996) ("We frequently have reminded litigants that federal courts are not boards of zoning appeals."). And, for the reasons explained above, the Takings Clause is an even more inapt vehicle for bringing to federal court a state law claim for immediate injunctive relief. In short, consideration of Plaintiffs' requests for relief under the state law claims advanced in Counts I, II, and III would constitute a "serious affront to the theory and practice of federalism" (*Flower Cab*, 685 F.2d at 194), regardless of whether Count IV is premature.[4]

## III. Conclusion

As explained above, the Court lacks jurisdiction over Plaintiffs' sole claim within the Court's original jurisdiction—a takings claim under the Fifth and Fourteenth Amendments to the Constitution of the United States (Count IV). That claim is not ripe because Defendants have not rendered a final decision on Plaintiffs' permit application. In addition, consistent with the usual practice in the Seventh Circuit, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims (Counts I, II, and III). Moreover, even if the Court did have original jurisdiction over Count IV, the factors set out in 28 U.S.C. § 1367(c) would militate against the exercise of discretionary supplemental jurisdiction in this instance as the motion presently before the Court turns on the application of state law to a municipality's application of its rules and guidelines. Accordingly, Count IV is dismissed without prejudice as premature and Counts I, II, and III are dismissed without prejudice and with leave to refile in state court pursuant to 735

---

[4] To the extent that the ripeness analysis in this case concerns not only "Article III limitations on judicial power," but also "prudential reasons for refusing to exercise jurisdiction" (*Reno*, 509 U.S. at 57 n.18), such as "the hardship of withholding court consideration" of the issues for decision (*National Park Hospitality Assn. v. Department of Interior*, 538 U.S. 803, 808 (2003)), the Court notes that Plaintiffs' requests for immediate relief in the form of a writ of mandamus or a mandatory injunction are fully briefed and those briefs can quickly be refiled in state court.

ILCS 5/13-217. The Court does not reach the merits of Plaintiffs' motion for a writ of mandamus and/or injunctive relief [7] and that motion is terminated as moot in view of the Court's jurisdictional rulings. A final judgment consistent with this opinion will enter under Federal Rule of Civil Procedure 58. This civil case is terminated.

Dated: June 29, 2021

_____
Robert M. Dow, Jr.
United States District Judge